MEIER v AWAAD

Docket No. 310808. Submitted February 5, 2013, at Detroit. Decided March 12, 2013, at 9:00 a.m.

Benjamin Meier and other minor plaintiffs, through their next friends, brought an action in the Wayne Circuit Court against Yasser Awaad, M.D., Awaad's former employer, Oakwood Healthcare, Inc., and related corporate entities, alleging that Awaad had intentionally misdiagnosed them with epilepsy or seizure disorder for the purpose of increasing his billings, which resulted in their being subjected to inappropriate medication, treatment, and medical testing. To identify witnesses and potential members of a class action, plaintiffs sought to obtain the names and addresses of other patients whom Awaad had diagnosed with these disorders, initially from the patients' insurers, then from defendants, and finally by serving a subpoena on the Michigan Department of Community Health (MDCH), which had records of patients whose treatment costs had been reimbursed by Medicaid. The MDCH refused to comply with the subpoena without a court order stating that doing so would not violate the privacy protections of the Health Insurance Portability and Accountability Act (HIPAA), 42 USC 1320d *et seq*. The court, Daphne Means Curtis, J., ordered the MDCH to comply, ruling that the disclosure would not violate HIPAA. The court also issued a separate protective order restricting access to the information and the purposes for which it could be used. After the information was released and the patients were contacted by plaintiffs' counsel, defendants applied for leave to appeal both orders, arguing that they violated Michigan's statutory physician-patient privilege, MCL 600.2157. The Court of Appeals held the application for leave in abeyance and stayed all proceedings, including any further use of the information released pursuant to the orders. After leave was granted, defendants moved for sanctions or other relief, asserting that plaintiffs had violated the stay order by using the information to send notices of intent to sue and requests for medical records. The Court of Appeals granted the motion, ordering the firms representing plaintiffs to pay $250 each and to cease using the information. Plaintiffs did not appeal this order.

The Court of Appeals *held*:

1. Release of patient information pursuant to the trial court's orders violated MCL 600.2157, which prohibits a person duly authorized to practice medicine or surgery from disclosing any information acquired in attending a patient in a professional character except as otherwise provided by law. The privilege this statute provides belongs solely to the patient and therefore can only be waived by the patient. This provision's predecessor, which contained comparable language, was construed in *Massachusetts Mut Life Ins Co v Bd of Trustees of Mich Asylum for the Insane*, 178 Mich 193 (1913), to apply to third parties who obtain confidential information from doctors and surgeons, and that construction was extended to MCL 600.2157 in *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26 (1999). Under these holdings, MCL 600.2157 bars the disclosure of confidential medical information by entities such as the MDCH, and the trial court's orders must be reversed. The fact that the information may have helped to establish plaintiffs' case is irrelevant, because the physician-patient privilege protects the identity of nonparty patients regardless of need or whether the patients themselves have invoked it.

2. Sanctions were not appropriate because the disclosure was the result of the trial court's decision rather than unilateral action by plaintiffs.

3. Defendants' appeal was not moot because, although the court could not prevent or remedy the harm caused by the disclosure, meaningful relief could be fashioned by ordering the return of all copies of the privileged information to the MDCH, the destruction of all electronic files containing the information except with respect to those patients who responded to plaintiffs' letters and were prepared to waive the physician-patient privilege, and the exclusion of the protected information from evidence at a future trial or for purposes of the class-certification analysis.

Reversed and remanded for implementation of conditional remedial measures.

1. Physicians and Surgeons — Physician-Patient Privilege — Third-Party Disclosures.

The physician-patient privilege established in MCL 600.2157, which prohibits a person duly authorized to practice medicine or surgery from disclosing any information acquired in attending a patient in a professional character except as otherwise provided by law, also applies to third parties who obtain confidential information from those authorized to practice medicine or surgery; this privilege

protects nonparty patients regardless of the motivation for seeking their information or whether the patients themselves have invoked it.

2. APPEALS — PHYSICIAN-PATIENT PRIVILEGE — RELEASE OF PROTECTED INFORMA-
TION — MOOTNESS.

An appeal from an order allowing the release of information pro-
tected by the physician-patient privilege is not rendered moot by
the information's subsequent disclosure if some form of meaning-
ful relief can be fashioned, such as precluding the protected
material and its fruit from being introduced as evidence.

*Secrest Wardle* (by *Bruce A. Truex* and *Drew W. Broaddus*) for plaintiffs.

*Kitch Drutchas Wagner Valitutti & Sherbrook* (by *Christina A. Ginter, Harry J. Sherbrook*, and *Charles W. Fisher*) for defendants.

Before: MURPHY, C.J., and DONOFRIO and GLEICHER, JJ.

MURPHY, C.J. The minor plaintiffs, through their next friends,[1] brought this lawsuit against defendant Yasser Awaad, M.D., and the remaining defendants, which are various corporate entities associated with Awaad's medical practice, alleging that Awaad intentionally mis-diagnosed them with either epilepsy or seizure disorder for the purpose of increasing his billings. Plaintiffs maintained that, as a result of the false diagnoses, they were subjected to unnecessary and inappropriate medi-cation, treatment, and medical testing. Plaintiffs al-leged claims sounding in medical malpractice, negligent credentialing, negligent supervision, silent fraud, bat-tery, conspiracy, and violation of the Michigan Con-sumer Protection Act (MCPA), MCL 445.901 *et seq.* In the course of discovery, plaintiffs served a subpoena on the Michigan Department of Community Health

---

[1] We note that the name "Laura Abel-Slater" also appears as "Laura Abdel-Slater" in some lower court filings.

(MDCH), requesting the names and addresses of all Medicaid beneficiaries who were treated by Awaad and coded as having been diagnosed with epilepsy or seizure disorder. The MDCH refused to comply absent a court order, and on plaintiffs' motion to show cause why the subpoena should not be enforced, the trial court ordered enforcement of the subpoena in order to allow the determination of putative class members and witnesses. The order also declared that disclosure of the specified information would not result in a violation of the Health Insurance Portability and Accountability Act (HIPAA), 42 USC 1320d *et seq.* In a separate protective order, the trial court restricted access to the requested patient list, set forth the permissible uses of the patient information, required the information to be maintained in a secure location, and authorized plaintiffs' counsel to contact individual patients identified in materials submitted by the MDCH in response to the subpoena. Defendants appeal by leave granted the two orders. We hold that the trial court's ruling violated Michigan's statutory physician-patient privilege, MCL 600.2157, as construed in *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26; 594 NW2d 455 (1999), and, relative to an earlier but similar version of the statute, *Massachusetts Mut Life Ins Co v Bd of Trustees of Mich Asylum for the Insane*, 178 Mich 193; 144 NW 538 (1913). Accordingly, we reverse the trial court's orders and remand for implementation of conditional remedial measures as specified below, but not including sanctions, as plaintiffs proceeded pursuant to court orders.

## I. BACKGROUND

The minor plaintiffs were patients of Awaad, a pediatric neurologist, who is alleged to have knowingly and willfully misdiagnosed plaintiffs with either epilepsy or seizure

disorder as part of an effort to maximize his billings.[2] Under this factual theory, plaintiffs commenced suit in 2008, asserting various legal causes of action including fraud and medical malpractice. Subsequently, in February 2012, plaintiffs subpoenaed the healthcare insurers of Awaad's patients, seeking the names and addresses of other patients that Awaad diagnosed with epilepsy or seizure disorder. Defendants and two of the recipients of the subpoenas filed an emergency motion to quash the subpoenas on the ground that disclosure of the requested information would violate the physician-patient privilege. Plaintiffs then decided to withdraw the subpoenas. Thereafter, plaintiffs served defendants with interrogatories, asking defendants to provide information regarding the number of Medicaid patients treated by Awaad who had been diagnosed with epilepsy and the amount of money expended by Medicaid in paying for treatment of those Medicaid beneficiaries. Defendants objected and plaintiffs' motion to compel was denied.

In May 2012, plaintiffs served the MDCH with a subpoena requesting the names and addresses of Medicaid beneficiaries whose records Awaad had coded with a diagnosis of epilepsy or seizure disorder. The MDCH, through the Attorney General's office, advised plaintiffs' counsel that there would be no compliance with the subpoena unless the trial court ruled that providing the requested information would not constitute a HIPAA

---

[2] In an administrative consent order entered in January 2012, Awaad was found to have violated the Public Health Code, MCL 333.16221(a), and he was fined $10,000 and placed on probation for one to five years under the supervision of a board-certified pediatric neurologist. See *In re Awaad*, consent order and stipulation before the Bureau of Health Professions Board of Medicine Disciplinary Subcommittee, Dep't of Licensing and Regulatory Affairs, entered January 25, 2012 (Complaint No. 43-07-105478).

violation. Plaintiffs proceeded to file a motion to show cause why their subpoena to the MDCH should not be enforced. Plaintiffs asserted that Awaad's Medicaid billings, including charges for electroencephalographies (EEGs), rose significantly after 2001, which was the first year that Awaad and his practice entered into incentive contracts that allowed Awaad to earn supplemental income based on a percentage of his net collected billings. Plaintiffs argued that the requested information was discoverable because it was relevant to the issues in the pending case, although they agreed that a protective order limiting the use of the information would be appropriate. Plaintiffs indicated that they intended to use the information to mail individual letters to each patient or former patient identified by the MDCH. They had no intent to disclose or publish the names in any other context. Plaintiffs requested that the trial court enter an order allowing disclosure of the requested information, declaring that no HIPAA violation would result from the disclosure, and compelling the MDCH's compliance with the subpoena.

The MDCH maintained that should the trial court grant plaintiffs' motion, the court should also require plaintiffs' counsel to stipulate to a protective order with respect to the disclosed names and addresses. In opposition to plaintiffs' motion, defendants characterized the motion as an attempt to evade or circumvent the statutory physician-patient privilege, MCL 600.2157, by seeking Medicaid information from the MDCH that plaintiffs would otherwise be unable to obtain directly from defendants. Defendants also argued that plaintiffs' request violated HIPAA's privacy protections. Defendants contended that disclosure of the names, addresses, and medical diagnoses of approximately 600 nonparty patients would violate Michigan's statutory physician-patient privilege, the common-law right of privacy, and public policy favoring patients' privacy. Defen-

dants also asserted that MCR 3.501(A), which governs class actions, precluded disclosure because that rule allows for notification to potential class members only after the class has been certified. Plaintiffs did move for class certification pursuant to MCR 3.501(B), but the trial court had not yet ruled on the certification motion at the time the orders at issue were entered.

In reply to defendants' response, plaintiffs argued that defendants lacked standing to challenge a subpoena directed at a nonparty and also lacked standing to assert the physician-patient privilege on behalf of the patients. Plaintiffs stated that they sought the names of the Medicaid beneficiaries because they were witnesses to Awaad's fraudulent scheme. Plaintiffs also anticipated that these witnesses would provide additional support for plaintiffs' request for class certification under MCR 3.501. Plaintiffs accused defendants of opposing the disclosure, not to protect former patients' confidential health information, but rather to conceal the fraudulent scheme from past patients, witnesses, and potential claimants.

At the hearing on plaintiffs' motion, the trial court ruled that MCL 600.2157 applied only to disclosures by healthcare providers, not third parties such as the MDCH. The court noted that the statute included a waiver for patients who bring malpractice actions against providers. The trial court did not agree that MCR 3.501 prohibited a party from discovering potential class members. The court ordered the MDCH to comply with plaintiffs' subpoena and provide the names and addresses of all Medicaid patients on whose behalf the MDCH made medical payments and who were assigned the epilepsy diagnostic code by Awaad, in order to allow a determination of putative class members and witnesses relative to the action. The order further declared that the disclosure did "not violate HIPAA" and that "the MDCH and [p]laintiff[s] may agree

to any additional [p]rotective [o]rder with regard to safe-guarding the name[s] and address[es] of all Medicaid patients produced by the MDCH."

The trial court also issued a protective order that limited access to the information to plaintiffs' attorneys and any law clerks, paralegals, and secretaries employed by plaintiffs' attorneys and agents. The protective order prohibited the list from being disclosed publicly or used for any purpose other than trial preparation and appeals in the case, but it did authorize plaintiffs' counsel to send individual letters to patients indentified on the list. Under the protective order, all authorized individuals with a copy of the list were required to destroy or delete the copies within 30 days after the action was concluded and no longer appealable.

The MDCH released the information to plaintiffs' counsel pursuant to the subpoena and enforcement order, and plaintiffs' counsel immediately sent a letter to each of the persons identified in the MDCH's disclosure. The letter provided as follows:

> Dear Parent or Medicaid Beneficiary:
>
> We have been provided your name by the Michigan Department of Community Health. We believe you may be a witness in an action currently pending in the Wayne County Circuit Court against Dr. Yasser Awaad and Oakwood Hospital concerning the allegations set forth in the attached Complaint.
>
> Please call me . . . at your earliest convenience to discuss this matter.

Defendants filed their application for leave to appeal after the letters were sent. In an order, this Court held the application for leave in abeyance, stayed "[a]ll proceedings, including any further use by plaintiffs of the names and other information released as a result of the circuit court's orders," and directed the parties to submit briefs

"addressing the remedy for an improper release of privileged information." *Meier v Awaad*, unpublished order of the Court of Appeals, entered July 6, 2012 (Docket No. 310808). After supplemental briefs were filed, this Court granted defendants' application for leave to appeal. *Meier v Awaad*, unpublished order of the Court of Appeals, entered August 6, 2012 (Docket No. 310808). On September 25, 2012, defendants filed a motion for sanctions or other relief for plaintiffs' alleged violation of this Court's previous stay order. Noting that it was "undisputed" that "since July 6, 2012, plaintiffs' counsel have utilized the names released as a result of the circuit court's June 13, 2012 order by sending Notices of Intent to sue and medical record requests to numerous medical providers," this Court ordered that "both firms representing plaintiffs shall pay $250.00 to the Clerk of the Court . . . and shall forthwith discontinue the use of the names and other information as provided for in our order of July 6, 2012." *Meier v Awaad*, unpublished order of the Court of Appeals, entered October 24, 2012 (Docket No. 310808).

## II. ANALYSIS

### A. STANDARD OF REVIEW

The interpretation and application of the physician-patient privilege is a legal question that is reviewed de novo by this Court. *Baker v Oakwood Hosp Corp*, 239 Mich App 461, 468; 608 NW2d 823 (2000). Matters concerning the construction of statutory language are likewise reviewed de novo. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007).

### B. GOVERNING PRINCIPLES OF STATUTORY CONSTRUCTION

This appeal concerns, in part, the construction and applicability of Michigan's statutory physician-patient

privilege, MCL 600.2157. In *McCormick v Carrier*, 487 Mich 180, 191-192; 795 NW2d 517 (2010), our Supreme Court recited the familiar governing principles regarding statutory interpretation:

> The primary goal of statutory construction is to give effect to the Legislature's intent. This Court begins by reviewing the language of the statute, and, if the language is clear and unambiguous, it is presumed that the Legislature intended the meaning expressed in the statute. Judicial construction of an unambiguous statute is neither required nor permitted. When reviewing a statute, all non-technical "words and phrases shall be construed and understood according to the common and approved usage of the language," MCL 8.3a, and, if a term is not defined in the statute, a court may consult a dictionary to aid it in this goal. A court should consider the plain meaning of a statute's words and their placement and purpose in the statutory scheme. Where the language used has been subject to judicial interpretation, the [L]egislature is presumed to have used particular words in the sense in which they have been interpreted. [Citations and quotation marks omitted.]

### C. DISCUSSION

We begin by noting that defendants do not argue that disclosure was prohibited under HIPAA. Furthermore, in the context of this suit, application of MCL 600.2157 is not preempted by HIPAA. In *Isadore Steiner, DPM, PC v Bonanni*, 292 Mich App 265, 267; 807 NW2d 902 (2011), this Court explained:

> This discovery dispute requires us to decide whether federal or state law controls and whether disclosure would violate the nonparty patients' privacy rights.

> By its language, HIPAA asserts supremacy in this area, but allows for the application of state law regarding physician-patient privilege if the state law is more protective of patients' privacy rights. In the context of litigation

that, as here, involves nonparty patients' privacy, HIPAA requires only notice to the patient to effectuate disclosure whereas Michigan law grants the added protection of requiring patient consent before disclosure of patient information. Because Michigan law is more protective of patients' privacy interests in the context of this litigation, Michigan law applies to plaintiff's attempted discovery of defendant's patient information.

We are similarly addressing a litigation discovery issue involving the privacy rights of nonparty patients. Accordingly, federal preemption is of no concern, and we continue with an examination of Michigan's statutory physician-patient privilege, MCL 600.2157, which provides:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon. If the patient brings an action against any defendant to recover for any personal injuries, or for any malpractice, and the patient produces a physician as a witness in the patient's own behalf who has treated the patient for the injury or for any disease or condition for which the malpractice is alleged, the patient shall be considered to have waived the privilege provided in this section as to another physician who has treated the patient for the injuries, disease, or condition. If a patient has died, the heirs at law of the patient, whether proponents or contestants of the patient's will, shall be considered to be personal representatives of the deceased patient for the purpose of waiving the privilege under this section in a contest upon the question of admitting the patient's will to probate. If a patient has died, the beneficiary of a life insurance policy insuring the life of the patient, or the patient's heirs at law, may waive the privilege under this section for the purpose of providing the necessary documentation to a life insurer in examining a claim for benefits.

The scope of the physician-patient privilege is governed entirely by the statutory language, as the privilege was not recognized under the common law. *Dorris*, 460 Mich at 33. "It is well established that the purpose of the statute is to protect the confidential nature of the physician-patient relationship and to encourage a patient to make a full disclosure of symptoms and condition." *Id.* Because the privilege of confidentiality belongs solely to the patient, it can only be waived by the patient. *Id.* at 34, citing *Gaertner v Michigan*, 385 Mich 49, 53; 187 NW2d 429 (1971). "A patient may intentionally and voluntarily waive the privilege." *Dorris*, 460 Mich at 39. As reflected in the express language of MCR 2.302(B)(1), which governs the scope of discovery, the protection of privileged information supersedes even the liberal discovery principles that exist in Michigan. *Id.* at 37.

With respect to the extent or reach of the physician-patient privilege, our Supreme Court in *Dorris, id.* at 34, noted that the Court had previously held in *Schechet v Kesten*, 372 Mich 346, 351; 126 NW2d 718 (1964), that the privilege precludes the disclosure of treatment histories and even the names of patients. The *Dorris* Court concluded:

> The language of [MCL 600.2157] is clear in its prohibition of disclosure of privileged information. In accordance with prior rulings of this Court, particularly *Schechet*, that the purpose of the privilege is to encourage patients' complete disclosure of all symptoms and conditions by protecting the confidential relationship between physician and patient, we find requiring the defendant hospitals to disclose the identity of unknown patients would be in direct contradiction of the language and established purpose of the statute.
>
> Historically, confidentiality has been understood to be necessary to promote full disclosure of a patient's medical

history and present medical concerns. . . . [P]atients armed
with the knowledge that their name may not be kept
confidential may not be as willing to reveal their full
medical history for fear that, ultimately, that information,
too, may lose its confidential status. This chilling of the
patient's desire to disclose would have a detrimental effect
on the physician's ability to provide effective and complete
medical treatment and is therefore "necessary" to enable a
physician "to prescribe" for a patient. [*Dorris*, 460 Mich at
37-39 (citation omitted).]

Indeed, the physician-patient privilege prohibits disclo-
sure even when the patient's identity is redacted. *Johnson
v Detroit Med Ctr*, 291 Mich App 165, 169; 804 NW2d 754
(2010).

"[T]he physician-patient privilege is an absolute bar
that prohibits the unauthorized disclosure of patient
medical records, *including when the patients are not
parties to the action.*" *Baker*, 239 Mich App at 463
(emphasis added). "[P]rotecting the interests of . . . non-
party patients is of utmost importance." *Isidore Steiner*,
292 Mich App at 274. The names, addresses, telephone
numbers, and medical information relative to nonparty
patients fall within the scope of the physician-patient
privilege. *Id.* at 276; see also *Johnson*, 291 Mich App at
169-170 (physician-patient privilege protected nonparty
patient documents).

Plaintiffs argue that defendants lacked standing to pose
a challenge under MCL 600.2157 because the physician-
patient privilege is held only by the patient and here no
patient has invoked the privilege. In further support of
their standing argument, plaintiffs contend that although
the courts have allowed healthcare providers to invoke the
privilege when the healthcare providers themselves have
been asked to make the disclosures during the course of
litigation, the disclosure request in this case was not
directed at defendants but at the MDCH, which does not

hold the privilege, did not provide the medical care, and is not a party to the suit. We initially question plaintiffs' reliance on "standing," which is a principle more closely associated with the question whether a party has the right to bring suit or has a legal cause of action. See *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). Moreover, the issue of privilege has a bearing on whether materials are discoverable, MCR 2.302(B)(1) ("[p]arties may obtain discovery regarding any matter [that is] not privileged"), and the admissibility of evidence, MRE 104(a) (existence of a privilege is for the court to decide relative to admissibility) and MRE 501 (general evidentiary rule on privilege). Certainly, a party to a lawsuit has "standing" or a right to raise issues or challenges with respect to discovery and evidentiary matters. We also note that plaintiffs speak of the fact that no patient identified on the MDCH list has invoked the privilege; however, the nature of the confidentiality privilege held by a patient is that the privilege exists until waived by the patient. See *Dorris*, 460 Mich at 34, 39 (privilege is held by the patient but can then be voluntarily and intentionally waived). Express or implied invocation of the privilege by the patient does not trigger the privilege; rather, it arises by operation of MCL 600.2157 upon the development of a physician-patient relationship.

Additionally, the cases cited above substantively examined whether *nonparty* patients were protected by the physician-patient privilege for purposes of determining whether disclosure was barred in a lawsuit, even though the cases entailed objections and challenges raised by the litigants and not the patients themselves. *Dorris*, 460 Mich 26 (the defendant hospital challenged the plaintiffs' right to obtain disclosure through discovery of the name of a nonparty patient who shared a hospital room with one of the plaintiffs); *Isidore Steiner*, 292 Mich App 265 (the defendant doctor objected to the plaintiff's efforts to

obtain disclosure of the doctor's patient list); *Johnson*, 291 Mich App 165 (the defendant healthcare providers challenged the plaintiff's discovery request that asked the healthcare providers to produce nonparty patient documents); *Baker*, 239 Mich App 461 (the defendant doctor and hospital objected to the plaintiff's discovery request seeking the production of nonparty patient medical records). As noted by the panel in *Isidore Steiner*, 292 Mich App at 276, nonparty patients are unlikely to even be aware of the pending lawsuit. Furthermore, while plaintiffs' subpoena and the trial court's orders were directed at the MDCH, which of course did not provide the medical care to the nonparty patients, and although defendants themselves were not required to disclose patient information, we fail to understand why these facts would deprive defendants, parties to the suit, from raising discovery and evidentiary objections regarding the information. Regardless of the source of the disclosure, whether it be defendants or the MDCH, the information could clearly have some effect on the litigation, thereby minimally giving defendants a right to object. If a violation of the privilege would arise upon disclosure of information, discovery of the information is not permissible under the court rules, nor could the information be admitted into evidence.

Another aspect of plaintiffs' standing argument, interwoven with the arguments addressed earlier, is the assertion that the MDCH, an outside third party and payor by way of Medicaid, is not "a person duly authorized to practice medicine or surgery," as framed in MCL 600.2157. Therefore, plaintiffs argue, the prohibition against disclosure does not pertain to a disclosure made by the MDCH. Plaintiffs are apparently arguing that a duly authorized doctor or surgeon has standing to raise the privilege under the statute only when he or she provided the medical care *and* was the one asked to disclose the

patient information. We view this argument not in terms of "standing" but as simply challenging the applicability of the privilege and whether it can be successfully invoked under the statute when the information is sought not from the doctor or surgeon who provided the medical care, but rather from a third party who has obtained patient information from the doctor or surgeon. The trial court ruled that a disclosure by the MDCH would not offend the statutory privilege because the MDCH was not "a person duly authorized to practice medicine or surgery."

The initial sentence in MCL 600.2157 does state that "[e]xcept as otherwise provided by law, *a person duly authorized to practice medicine or surgery shall not disclose* any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon." (Emphasis added.) This language might suggest that persons other than the doctor or surgeon who cared for the patient could legally disclose patient information once obtained. The language of MCL 600.2157 only speaks of barring disclosure by "a person duly authorized to practice medicine or surgery," and there can be no dispute that neither the MDCH nor Medicaid fits within that category. However, we conclude that *Dorris*, 460 Mich 26, and *Massachusetts Mut Life*, 178 Mich 193, do not allow for the interpretation posited by plaintiffs. And we are of course bound by this Supreme Court precedent.

In *Dorris*, 460 Mich at 38 n 6, the Court, entertaining the argument that a hospital and not a doctor was asked to disclose patient information, ruled:

> The dissent argues that by not addressing the distinction that plaintiffs are requesting patient names from a hospital, as opposed to a physician, we are imputing the physician-patient privilege to the hospital. However, in

[*Massachusetts Mut Life*, 178 Mich at 204], quoting *Smart v Kansas City*, 208 Mo 162, 198; 105 SW 709; 14 LRA Ann Cas 565 (1907), this Court stated:

"[I]t seems that it must follow as a natural sequence that when the physician subsequently copies that privileged communication upon the record of the hospital, it still remains privileged. If that is not true, then the law which prevents the hospital physician from testifying to such matters could be violated both in letter and spirit and the statute nullified by the physician copying into the record all the information acquired by him from his patient, and then offer or permit the record to be offered in evidence containing the diagnosis, and thereby accomplish, by indirection, that which is expressly prohibited in a direct manner."

In this case, plaintiffs are essentially claiming that, in contravention of MCL 600.2157, the physician-patient privilege would be imputed to the MDCH if we were to rule that the privilege prohibited the MDCH from disclosing to plaintiffs the nonparty patient information that the MDCH had acquired from Awaad for purposes of billing and payment. The gravamen of this argument was rejected by the *Dorris* Court, which held that the statute prohibited disclosure even though the plaintiffs requested the patient names from a hospital and not specifically from "a person duly authorized to practice medicine or surgery." The Court in *Dorris*, relying on language found in *Massachusetts Mut Life*, made clear that the privilege continues to protect against disclosure by parties other than a physician after the physician conveys privileged communications obtained in the physician-patient relationship to those third parties. The *Dorris* Court indicated that its decision was necessary in order to honor the letter and spirit of MCL 600.2157 and to prevent its indirect nullification. At the time *Massachusetts Mut Life* was decided in 1913, the statute contained comparable language, providing that " '[n]o person duly authorized to practice physic or surgery shall be allowed to disclose any

information which he may have acquired in attending any patient . . . .' " *Massachusetts Mut Life*, 178 Mich at 199, quoting 1897 CL 10181, as amended by 1909 PA 234. The Supreme Court in *Massachusetts Mut Life* held that the plaintiffs were not entitled to a writ of mandamus compelling the asylum's board of trustees to permit inspection of records concerning the mental and physical condition of an asylum patient. The Court, in part, relied on and quoted at length *Price v Standard Life & Accident Ins Co*, 90 Minn 264; 95 NW 1118 (1903), wherein the Minnesota Supreme Court observed:

> "The information communicated by Dr. Kimball to the superintendent of the hospital was acquired by the former while attending the patient, and was necessary to enable him to prescribe or act for him. Dr. Kimball would not have been allowed to make any such disclosure, *and the statutory restriction upon him could not be evaded by introducing in evidence testimony of a third party as to what the doctor said about the case.*" [*Massachusetts Mut Life*, 178 Mich at 205, quoting *Price*, 90 Minn at 269-270 (emphasis added).]

Again, the principle that emanates from *Massachusetts Mut Life* and *Dorris* is that the statutory physician-patient privilege operates to bar disclosure even when the disclosure is not sought directly from a physician or surgeon but rather from a third party who obtained protected information from a doctor.[3] The principle, in our view, makes for good public policy, but we recognize that it is not the role of the courts to render decisions with the aim of setting social policy under the guise of construing a statute, especially when it becomes necessary to strain the statutory language in order to reach the policy goal. "[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of

---

[3] Neither of these Supreme Court opinions suggested that agency principles played a role in the analysis.

the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466
Mich 57, 63; 642 NW2d 663 (2002). And our Supreme
Court "has recognized that the Legislature is the superior
institution for creating the public policy of this state[.]"
*Woodman v Kera LLC*, 486 Mich 228, 245; 785 NW2d 1
(2010) (opinion by YOUNG, J.) (emphasizing that making
social policy is the Legislature's job and not the job of the
courts). While the relevant aspects of *Massachusetts Mut
Life* and *Dorris* might make for good policy, support in the
statutory language would seem to be lacking when it
comes to prohibiting disclosures by a third party. However,
it is for the Supreme Court to revisit the issue should it
wish to do so, not this Court. In this case, the MDCH
acquired patient names and diagnoses that originated
from Awaad's practice of medicine and treatment of the
nonparty patients. We therefore conclude that MCL
600.2157, as construed in *Massachusetts Mut Life* and
*Dorris*, prohibited the disclosure ordered by the trial
court, and the court's orders are hereby reversed.

Before addressing the proper remedy, we briefly exam-
ine and reject plaintiffs' argument that disclosure was
proper because the information is relevant to establishing
plaintiffs' case, it can be used in regard to potential
certification of a class action, and its disclosure would
prevent defendants from manipulating the physician-
patient privilege in order to avoid liability, absent any true
concern for protecting the patients' rights. In *Baker*, 239
Mich App at 476-478, this Court rejected an argument
that a party should not be permitted to invoke the
physician-patient privilege when the purpose for doing so
is to shield the party from damaging or unfavorable
evidence and to withhold relevant evidence from the
requesting party. The Court held that the "alleged motive
in asserting the privilege is inconsequential." *Id*. at 478.
"The physician-patient privilege protects the identity of
nonparty patients regardless of need." *Johnson*, 291 Mich

App at 169. "There are no exceptions under Michigan law for providing random patient information related to any lawsuit." *Isidore Steiner*, 292 Mich App at 272. Accordingly, plaintiffs' argument is unavailing.

With respect to a remedy, we initially reject defendants' recommendation that we impose sanctions, such as disqualifying plaintiffs' counsel from further engaging in representation or ordering the payment of fees and costs. The disclosure was not the result of unilateral action by plaintiffs. Although plaintiffs served the subpoena on the MDCH seeking the information, it was ultimately the trial court's decision that resulted in the improper disclosure. Defendants complain that plaintiffs acted improperly by immediately sending letters to the nonparty patients upon receipt of the subpoenaed information. The record reflects that the enforcement and protective orders were entered on the same date as the hearing on plaintiffs' motion to show cause. The record further indicates that defendants' oral motion for a stay made at the hearing was denied; that the MDCH had already gathered and prepared the information and had it available for disclosure pending the court's decision; that the trial court, at the hearing, reviewed and approved plaintiffs' proposed patient letter, which had already been drafted in anticipation of a favorable ruling; and that the court, at the hearing, ordered the MDCH to immediately turn over the information, which is also reflected in the protective order. The protective order gave plaintiffs permission to send the letters to the nonparty patients, and plaintiffs did so without delay. On review of the transcript of the hearing, it is evident that all concerned were aware that, with the court's full approval and blessing, plaintiffs were going to receive the information from the MDCH at the conclusion of the hearing and then as quickly as possible send the letters. Ultimately, plaintiffs were proceeding in accordance with the trial court's directives.

Despite the lack of a basis to invoke sanctions, this appeal is not moot. In *Church of Scientology of California v United States*, 506 US 9; 113 S Ct 447; 121 L Ed 2d 313 (1992), the Internal Revenue Service (IRS), as part of a tax investigation, sought access to church materials that were in the possession of a state court clerk, and the clerk permitted the IRS to examine and make copies of two tapes regarding the church after the clerk was served with an IRS summons. The two tapes contained recorded conversations between church officials and their attorneys. In a federal action initiated by the church, a court entered a temporary restraining order that required the IRS to file its copies of the tapes and related notes with the federal court.[4] The copies of the tapes were subsequently returned to the state court clerk. The IRS then filed a petition in federal court, seeking enforcement of the earlier summons directed at the state court clerk, and the church intervened, arguing that enforcement of the summons would violate the attorney-client privilege. The federal district court ordered compliance with the IRS summons, and the church appealed, but copies of the tapes were delivered to the IRS while the appeal was pending after the church's request for a stay was denied. The United States Court of Appeals for the Ninth Circuit dismissed the church's appeal as moot, given that the state court clerk had already delivered copies of the tapes to the IRS. The United States Supreme Court granted certiorari to address the narrow question whether the appeal was moot. *Id.* at 10-12.

The Supreme Court held that the appeal was not moot, stating that "[w]hile a court may not be able to return the parties to the *status quo ante* . . . , a court can fashion *some* form of meaningful relief in circumstances such as

---

[4] It is unclear regarding whether the IRS had any opportunity to study the tapes before the restraining order was entered.

these." *Id.* at 12-13. The Court observed that "[e]ven though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information on the tapes, a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession." *Id.* at 13. The availability of these remedies precluded a finding that the appeal was rendered moot. *Id.* The Court concluded "that compliance with the summons enforcement order did not moot the Church's appeal." *Id.* at 18.

We likewise hold that compliance with the trial court's subpoena enforcement order did not moot defendants' appeal. With respect to the appropriate remedies to apply, the issue is a bit complex here and must be viewed in the context of the reality that the nonparty patients have now been informed of the pending litigation against Awaad and are aware of the disclosure by the MDCH. We must be extremely wary of the rights of these patients, considering that, although defendants as litigants had the right to raise physician-patient privilege issues in the lawsuit, it is ultimately the patients themselves who hold the privilege. We cannot tread on their rights through the imposition of remedies resulting from the trial court's error; the non-party patients did nothing wrong. If these patients wish to waive the privilege and engage in litigation against Awaad —whether in this suit, assuming procedural rules allow them to be added as parties, or in a separate suit—they must be permitted to do so. Additionally, if these patients wish to waive the privilege and simply participate as witnesses in the lawsuit, they must be allowed to do so, if otherwise permissible under the Michigan Rules of Evidence. Accordingly, nonparty patients who came forward in response to plaintiffs' letters and showed a desire to participate can become involved in the litigation, subject to procedural and evidentiary rules, if they intentionally

and voluntarily waive the physician-patient privilege. Under such circumstances, defendants would not be in a posture to complain about a violation of the physician-patient privilege because the privilege will have been waived, whether considered a retroactive waiver, corrective waiver, or a waiver of ongoing observance of the privilege.

Moving forward, we order plaintiffs to return all copies of the privileged information to the MDCH and to destroy all electronic files containing the information, subject to an exception with respect to information concerning those patients who stepped forward in response to plaintiffs' letters and who are prepared to waive the physician-patient privilege.[5] Plaintiffs may use information obtained through the disclosure, but only as it relates to patients who waive the privilege.

With respect to evidentiary matters, the United States Supreme Court in *Mohawk Industries, Inc v Carpenter*, 558 US 100, 109; 130 S Ct 599; 175 L Ed 2d 458 (2009), noted that "[a]ppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." See also *Franzel v Kerr Mfg Co*, 234 Mich App 600, 617-618; 600 NW2d 66 (1999) (judgment on a breach of contract claim had to be reversed where the trial court erred in admitting a letter that was subject to the attorney-

---

[5] In regard to nonparty patients who did not respond to the letters, we rule, in attempting to fashion a just and reasonable remedy, that plaintiffs cannot initiate new efforts to contact those patients. We have the authority, on terms deemed just, to "enter any ... order or grant further or different relief as the case may require[.]" MCR 7.216(A)(7). Of course, those patients who failed to respond are not precluded in pursuing their own course of action.

.

client privilege). In this case, absent participation in the litigation by a patient who waives his or her privilege, we order that the protected information contained in the MDCH's disclosure and any of its fruits are excluded from evidence should the case proceed to trial. And the trial court may not consider any information obtained by the wrongful disclosure for purposes of its class-certification analysis, with an exception for information pertaining to those nonparty patients who have come forward in an attempt to participate and are willing to waive the privilege, as well as an exception simply as to the number of patients identified by the MDCH, see MCR 3.501(A)(1)(a).

### III. CONCLUSION

We hold that the trial court's ruling violated Michigan's statutory physician-patient privilege, MCL 600.2157, as construed in *Dorris*, 460 Mich 26, and *Massachusetts Mut Life*, 178 Mich 193. Information regarding nonparty patients sought in the discovery process falls within the scope of the physician-patient privilege. Defendants had the right as litigants to raise the issue of privilege in relationship to discovery and evidentiary matters. Defendants' motivation in raising the privilege issue and its effect on plaintiffs' ability to prove their case are irrelevant in determining whether the privilege applies. We reverse the trial court's orders and remand for implementation of conditional remedial measures as directed above.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Defendants having prevailed on appeal, we award them taxable costs under MCR 7.219.

DONOFRIO and GLEICHER, JJ., concurred with MURPHY, C.J.