MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 115
Docket:      Cum-18-445
Argued:      March 5, 2019
Reargued:    July 15, 2020
Decided:     September 29, 2020
Revised:     April 1, 2021

Panel:       MEAD, JABAR, HUMPHREY, and HORTON, JJ., and HJELM, A.R.J.*
Majority:    MEAD, HUMPHREY, and HORTON, JJ., and HJELM, A.R.J.
Dissent:     JABAR, J.

ESTATE OF CAROL A. KENNELLY

v.

MID COAST HOSPITAL

HUMPHREY, J.

[¶1]  In this appeal, arising in a medical malpractice case, we must decide whether medical records of individuals who are not parties to these proceedings, even when redacted to remove personally identifying information, are protected from discovery by statutes providing for patient and medical records privacy, 42 U.S.C.S. § 1320d-6 (LEXIS through Pub. L. No.

---

\* At the time that this case was originally argued, Chief Justice Saufley participated in the appeal, but she resigned before this opinion was certified.  Justices Alexander and Hjelm also participated in the first argument, but they retired before this opinion was certified.  Justice Hjelm is now participating in this appeal as an Active Retired Justice.  This appeal has since been reargued, and the panel now includes Justice Horton.

2

116-158); 22 M.R.S. § 1711-C (2020),[1] or the physician-patient privilege, M.R. Civ. P. 26(b)(1); M.R. Evid. 503(a)(1)(A), (a)(2)(A), (b).

[¶2]  Mid Coast Hospital (MCH) appeals from an order entered by the Superior Court (Cumberland County, *L. Walker, J.*) compelling discovery of (1) the redacted medical records of fifty MCH patients who are not parties to these proceedings and (2) the personnel file of Dr. Mia Marietta, a former employee of MCH who performed the surgery at issue in this case.[2]  MCH argues that these records are not subject to discovery because they are not relevant, they are protected under state and federal law, and they are privileged under the Maine Rules of Evidence.  *See* 42 U.S.C.S. § 1320d-6; 22 M.R.S. § 1711-C(2); M.R. Civ. P. 26(b)(1); M.R. Evid. 503.  The Estate of Carol A. Kennelly ("the Estate")[3] argues that the appeal is interlocutory because it does not satisfy any

---

[1]  Although references to Title 18-A in 22 M.R.S. § 1711-C have now been updated to reference Title 18-C, these amendments are immaterial to the issues on appeal, and in all other respects the statute now in effect is identical to that which the court construed in this matter.  *See* P.L. 2017, ch. 402, §§ C-44, F-1 (effective Sept. 1, 2019 pursuant to P.L. 2019, ch. 417, § B-14) (codified at 22 M.R.S. § 1711-C (2020)).  We cite the current statute throughout this opinion.

[2]  MCH originally also appealed the trial court's order compelling production of documents relating to Dr. Marietta's training and continuing education and of an audit trail of her entries in a patient's electronic medical records.  MCH later agreed to produce these materials, however, and therefore is no longer challenging those portions of the court's order.

[3]  Kennelly died in November 2018, while this appeal was pending.  We granted the plaintiff's motion to substitute her estate as the plaintiff in this action.  Accordingly, all references to the proceedings in this action refer to "the Estate."  There is no suggestion in the record that Kennelly's death was related to the medical procedure at issue.

of the exceptions to the final judgment rule and that the records at issue are discoverable. We conclude that MCH's appeal from the portion of the order compelling production of the personnel file is interlocutory and does not fall within any of the exceptions to the final judgment rule, but we reach the merits of MCH's appeal from the court's order compelling discovery of the fifty nonparty patient records, and we vacate that part of the order.

## I. BACKGROUND

[¶3] The pertinent facts are largely procedural and are drawn from the trial court record, which includes discovery materials already produced. *See Doe v. McLean*, 2020 ME 40, ¶ 2, 228 A.3d 1080. On September 2, 2015, Dr. Marietta performed a laparoscopic cholecystectomy—a gallbladder removal—on Carol A. Kennelly at MCH in Brunswick. The Estate alleges that Dr. Marietta, who is not a party to this action, negligently cut the incorrect duct during the procedure, causing bile to leak into Kennelly's abdomen, which required surgical repair, an extended recovery, and other medical treatments. The Estate further alleges that MCH is vicariously liable as Dr. Marietta's employer.

[¶4] In November 2016, the Estate filed a notice of claim of medical malpractice against MCH, and the parties proceeded through the prelitigation

4

screening panel process. *See* 24 M.R.S. § 2853(1) (2020); M.R. Civ. P. 80M(b)(1). After the prelitigation screening process concluded without the parties reaching a settlement, the Estate filed a complaint in 2018 alleging medical malpractice. *See* 24 M.R.S. § 2903 (2020).

[¶5] The Estate alleges that MCH breached its duty to Kennelly when Dr. Marietta performed the surgery in a manner that violated the appropriate standard of care. It contends that the standard of care in this procedure is called the Critical View of Safety (CVS). According to the Estate, MCH's expert testified before the screening panel that, although CVS is the safest way to perform this procedure and is the standard of care in major cities, "a surgeon in Maine is within the standard of care as long as [the surgeon] use[s] an approach that [the surgeon] feel[s] comfortable with." Dr. Marietta testified in a deposition that she performs roughly 200 surgeries per year, the majority of which are laparoscopic cholecystectomies, and that she does not use the phrase "critical view of safety" because she believes the term is unclear, and prefers instead to describe the specific steps she takes in a procedure.

[¶6] The Estate requested, and later filed a motion to compel the production of, Dr. Marietta's operative notes, with certain redactions, for the twenty-five gallbladder removal surgeries she performed on nonparty patients

before Kennelly's surgery and the twenty-five gallbladder removal surgeries she performed on nonparty patients after Kennelly's surgery.[4]

[¶7]  MCH objected to the production of the operative notes, arguing that the notes were privileged, confidential, and protected by state and federal law; that the request was not reasonably calculated to lead to the discovery of admissible evidence; and that the notes would be unduly burdensome to produce.  The Estate argued that the redacted operative notes were relevant to determine whether Dr. Marietta had followed her standard practice during Kennelly's surgery and that production of those records would not violate privilege or confidentiality requirements.

[¶8]  By written order entered on October 15, 2018, the Superior Court granted the Estate's motion to compel discovery and ordered MCH to produce, subject to redaction, Dr. Marietta's operative notes from the twenty-five nonparty surgeries she performed before Kennelly's procedure and the twenty-five she performed after it.  The court ordered that the records be redacted and produced as follows:

> Each redacted record shall include <u>only</u> the year of the surgery, the name of the surgeon (Dr. Marietta), the name of the procedure, and

---

[4]  The Estate initially requested records from the fifty procedures performed before and fifty procedures performed after Kennelly's surgery, but later reduced the number of records it was requesting.

6

a portion of the section labeled "operative procedure" (*i.e.*, all information other than the year, the name of the surgeon, the name of the procedure, and a portion of the "operative procedure" will be redacted).  The "operative procedure" section shall be provided only to the point in the surgery where the gallbladder was removed.  To the extent there is any identifying information, (*e.g.*, name, date of birth, age, sex, race) in the "operative procedure" section, such information shall also be redacted.  The [c]ourt is satisfied that these significantly redacted records will not identify any non-parties and that their identification will not be able to be discerned from the records or otherwise.

. . . .

. . . [A]ll records produced by this Order shall be used by Plaintiff solely for the purpose of prosecuting her claim before the court.  Plaintiff's counsel shall not attempt to identify persons whose identities have been redacted and shall not provide copies to anyone, other than expert witnesses in the case.

(Emphasis in original.)

[¶9]  MCH did not produce the requested materials but rather, on November 5, 2018, filed a notice of appeal from the discovery order.  The Estate filed motions to dismiss the appeal as interlocutory and to supplement the record with certain materials.  We denied both of the Estate's motions but ordered that the appellate justiciability of the issues raised would be addressed with the merits of the appeal.[5]

---

[5]  On this issue, we conclude that as to the medical records of nonparty patients, which may be subject to the physician-patient privilege, the death knell exception to the final judgment rule applies, and we proceed to address all issues pertaining to those records.  *See Harris Mgmt., Inc. v. Coulombe*, 2016 ME 166, ¶ 11 n.3, 151 A.3d 7; *see also* M.R. Civ. P. 26(b)(1).  The appeal from the order

## II. DISCUSSION

[¶10]   On appeal, MCH challenges the court's order compelling production of the fifty nonparty operative notes.  Much as it did before the trial court, MCH argues here that no portion of the nonparty medical records is discoverable because the records are not relevant, *see* M.R. Civ. P. 26(b)(1), and are protected by both state and federal privacy laws, *see* 22 M.R.S. § 1711-C(2); 42 U.S.C.S. § 1320d-6, and the physician-patient privilege, *see* M.R. Evid. 503. MCH asserts that the court therefore abused its discretion by ordering it to produce the requested material.

A.    Relevance

[¶11]  MCH first argues that the court abused its discretion by ordering production of the operative notes because the way Dr. Marietta performed nonparty surgeries has no bearing on whether she breached her duty of care to Kennelly.  The trial court found that the Estate's discovery request was "[m]ore than a mere fishing expedition for irrelevant surgical errors in other surgeries" and sought "to better establish what procedures would be consistent with the

---

compelling production of the personnel file does not, however, fall within an exception to the final judgment rule because 26 M.R.S. § 631 (2020) does not create a privilege that could protect a document from discovery.  *See* M.R. Civ. P. 26(b)(1) (allowing the discovery of "any matter, not privileged"); *Pinkham v. Dep't of Transp.*, 2016 ME 74, ¶¶ 12-13, 139 A.3d 904.

applicable standard of care and whether the procedure Dr. Marietta used in [Kennelly]'s surgery breached that standard." We agree but only as to the surgical procedures preceding Kennelly's.

[¶12] We review for clear error the court's determination that the nonparty operative notes are relevant. *See Pinkham v. Dep't of Transp.*, 2016 ME 74, ¶ 17, 139 A.3d 904. Pursuant to M.R. Civ. P. 26(b)(1), a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." The scope of discoverable materials at this stage in the proceedings is broader than the scope of relevant evidence at trial. *Compare id.* ("It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears *reasonably calculated to lead to the discovery of admissible evidence.*" (emphasis added)) *with* M.R. Evid. 401 ("Evidence is relevant if: [i]t has *any tendency to make a fact more or less probable* than it would be without the evidence; and [t]he fact is of consequence in determining the action." (emphasis added)). Therefore, the issue presented to the trial court was whether the nonparty operative notes were either relevant to the standard of care Dr. Marietta owed Kennelly or reasonably

calculated to lead to the discovery of "admissible evidence," which must itself be relevant. M.R. Civ. P. 26(b)(1); *see* M.R. Evid. 401, 402.

[¶13]  The Estate renews on appeal its argument that operative notes from surgeries performed on nonparties both before and after Kennelly's procedure are relevant to establishing or are reasonably calculated to lead to admissible evidence regarding (1) the standard of care to which Dr. Marietta should have adhered, and (2) whether Dr. Marietta had knowledge of and experience using the CVS technique. The Estate's argument may be persuasive with regard to the surgeries Dr. Marietta performed before Kennelly's procedure, but it fails as to those performed after Kennelly's procedure.

[¶14]  Unlike the surgical techniques used by Dr. Marietta before Kennelly's surgery, those used afterward have no bearing on whether Dr. Marietta had used or had been aware of the CVS technique at the time she performed the gallbladder procedure on Kennelly or whether during Kennelly's procedure she had used, as an alternative to CVS, a technique with which she was "comfortable." Therefore, the operative notes for surgeries performed after Dr. Marietta operated on Kennelly are unlikely to lead to the discovery of

admissible evidence and are therefore not discoverable. M.R. Civ. P. 26(b)(1).

The court committed clear error, and we vacate that part of the court's order.[6]

[¶15] We turn to the question of whether the operative notes from procedures before Kennelly's surgery, although relevant, are protected from discovery by statutory law or the physician-patient privilege.

B.    State and Federal Statutory Prohibitions

[¶16] MCH argues that the nonparty operative notes are protected from discovery by the Maine statute providing for confidentiality of health care information, 22 M.R.S. § 1711-C(2), and the federal Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C.S. § 1320d-6. We review de novo whether either statute prevents disclosure of the nonparty operative notes. *See SAD 3 Educ. Ass'n v. RSU 3 Bd. of Dirs.*, 2018 ME 29, ¶ 14, 180 A.3d 125.

[¶17] In general, both the Maine statute and HIPAA prohibit the disclosure of individually identifiable health care information;[7] however, each

---

[6] Even if the notes from these later procedures were relevant or reasonably calculated to lead to the discovery of admissible evidence, they would be protected from disclosure for the same reasons, discussed below, that the notes from the surgeries preceding Kennelly's were privileged and therefore not discoverable.

[7] The health care information protected by Maine's statute and HIPAA is, specifically, information that *identifies* the patient. *See* 22 M.R.S. § 1711-C(1)(E), (2) (2020); 42 U.S.C.S. § 1320d-6 (LEXIS through Pub. L. No. 116-91); *see also* 45 C.F.R. § 164.514(a) (2020) ("Health information that does not identify an individual and with respect to which there is no reasonable basis to believe that the information can be used to identify an individual is not individually identifiable health information.").

statute also contains an exception permitting disclosure of health care information pursuant to a court order.[8]  *See* 22 M.R.S. § 1711-C(6)(F-1); 45 C.F.R. § 164.512(e) (2020).  Thus, the trial court correctly determined that, despite substantial protection under state and federal laws, "neither the [Maine statute] nor HIPAA absolutely bars the disclosure of medical records" because each permits disclosure by the custodian of the records if they do not identify the patient or if disclosure is directed by a court order.

[¶18]  However, neither the Maine statute nor HIPAA addresses the circumstances under which a court may order the disclosure of a nonparty patient's operative notes.  These statutes speak in terms of confidentiality rather than *privileges* that protect records from disclosure through discovery pursuant to Rule 26(b)(1).  Absent provisions specifically declaring an individual's health care information *privileged*, the statutes do not directly

---

[8] The regulations implementing HIPAA plainly contemplate that confidential medical records may be disclosed pursuant to a court order in the context of litigation.  For example, "[a] covered entity *may disclose* protected health information in the course of *any judicial or administrative proceeding* . . . in response to an order of a court," 45 C.F.R. § 164.512(e) (2020) (emphasis added), without violating HIPAA's confidentiality protections and without leading to the penalties created in 42 U.S.C.S. § 1320d-6.

Title 22 M.R.S. § 1171-C similarly provides that "[a]n individual's health care information is confidential and may not be disclosed other than to the individual by the health care practitioner or facility except as provided in subsection 3, 3-A, 3-B, 6 or 11."  22 M.R.S. § 1711-C(2).  Subsection 6 lays out a list of exceptions to that general rule, one of which is that a health care practitioner or facility covered by section 1171-C may disclose confidential health care information "[a]s directed by order of a court or as authorized or required by statute."  22 M.R.S. § 1711-C(6)(F-1) (2020).

address the judicial analysis of privilege in the context of discovery or the trial court's authority to order the disclosure of nonparty medical records. *See* M.R. Evid. 503 (physician-patient privilege); M.R. Civ. P. 26(b)(1) (permitting discovery of materials "not privileged"); *see also Pinkham*, 2016 ME 74, ¶¶ 10, 13, 139 A.3d 904 (distinguishing confidentiality and privilege); *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 518 (D.C. Cir. 1996) (stating that privileged information is "presumptively not discoverable").

[¶19] Thus, we turn to the question of whether the operative notes sought in this case are categorically protected by the physician-patient privilege such that a court may not order their disclosure without a waiver of the privilege by the nonparty patient, or whether they may be redacted to an extent that the privilege no longer applies.

C.     Privilege

[¶20] MCH contends that the nonparty records are protected from discovery by the physician-patient privilege and that, in the absence of a waiver by the nonparty patient, no redaction can abrogate that privilege. *See* M.R. Civ. P. 26(b)(1); M.R. Evid. P. 503. We review de novo the "nature and scope" of the physician-patient privilege. *See Dubois v. Dep't of Env't. Prot.,* 2017 ME 224, ¶ 13, 174 A.3d 314.

[¶21]  It is well established that "discovery is not a limitless mechanism to obtain information."  *Pinkham,* 2016 ME 74, ¶ 13, 139 A.3d 904.  Privileged information, although often relevant, is "neither discoverable nor admissible at trial."  *Id*.; *see also* M.R. Civ. P. 26(b)(1).  "Rules of privilege are designed to keep out some portion of the truth in order to foster relationships that as a matter of social policy are deemed to deserve protection."  Field & Murray, *Maine Evidence* § 501.1 at 206 (6th ed. 2007).  One such privilege, found in Maine Rule of Evidence 503, protects confidential communications between a patient and the patient's physician.

1.    The Physician-Patient Privilege in Maine

[¶22]  There was no physician-patient privilege at common law.  The privilege was first adopted in Maine by statute, which provided, in pertinent part:

> Except at the request of, or with the consent of, the patient, no duly licensed physician shall be required to testify in any civil or criminal action . . . respecting any information which he may have acquired in attending, examining or treating the patient in a professional capacity if such information was necessary to enable him to furnish professional care to the patient. . . .
>
> Nothing in this section shall prohibit disclosure by a physician of information concerning a patient when such disclosure is required by law.

32 M.R.S.A. § 3295 (Supp. 1973).[9]  In 1976, when we first promulgated the Maine Rules of Evidence in our capacity as the Supreme Judicial Court, we included a rule specifically adopting the physician-patient privilege because we considered the statutory privilege in section 3295 to be "a dubious protection to the confidentiality of the relationship [between physician and patient], since disclosure would be required when a court in the exercise of sound discretion deem[ed] such disclosure necessary to the proper administration of justice." M.R. Evid. 503 Advisers' Note to former M.R. Evid. 503 (Feb. 2, 1976) (quotation marks omitted); *see also* Field & Murray, *Maine Evidence* § 503.1 at 225.  The Rule was intended to provide what the statutory privilege could not: "clear assurance to the patient . . . before the communication was made that it would not be ordered to be disclosed."[10]  M.R. Evid. 503 Advisers' Note to former M.R. Evid. 503 (Feb. 2, 1976).  Rule 503 is currently the only source of the physician-patient privilege in Maine.

[¶23]  Rule 503 provides that "[a] *patient has a privilege to refuse to disclose, and to prevent any other person from disclosing,* confidential

---

[9]  Title 32 M.R.S.A. § 3295 was repealed by P.L. 1977, ch. 564, § 123 (effective July 23, 1977).

[10]  The physician-patient privilege is not absolute.  *See* M.R. Evid. 503(e) (providing exceptions not applicable to this appeal).

communications made for the purpose of diagnosing or treating the patient's physical, mental, or emotional condition, including alcohol or drug addiction." M.R. Evid. 503(b) (emphasis added). Subject to several exceptions listed in Rule 503(e), none of which is applicable here, the Rule specifically protects confidential communications "between or among" the patient; the patient's "health care professional, mental health professional, or licensed counseling professional"; and "[t]hose who were participating in the diagnosis or treatment at the direction of the health care, mental health, or licensed counseling professional." M.R. Evid. 503(b).

[¶24]  Whereas Maine's confidentiality statute protects "health care information," 22 M.R.S. § 1711-C(1)(E), (2), and HIPAA protects "individually identifiable health information," 42 U.S.C.S. § 1320d-6(a), Rule 503 protects "confidential communications." Both the state and federal statutes permit disclosure when certain information is redacted or withheld. *See* 22 M.R.S. § 1711-C(1)(E), (2); 42 U.S.C.S. § 1320d-6. On the other hand, Rule 503 by its plain terms does not provide that redaction of discrete pieces of information conveyed *as part of* a confidential communication will remove the entire communication from the privilege's protection. *See Wipf v. Altstiel,* 888 N.W.2d 790, 796-98 (S.D. 2016) (Gilbertson, C.J., dissenting) ("Simply put,

. . . a patient medical record is a confidential communication, regardless of the information it contains."); *In re Columbia Valley Reg'l Med. Ctr.*, 41 S.W.3d 797, 800-02 (Tex. App. 2001). Thus, in this context, the terms "confidential communication" and "information" are closely related, but they are not synonymous.

[¶25] The privilege available under Rule 503 belongs to the patient, but it may also be claimed on behalf of the patient by the patient's guardian, conservator, or personal representative. *See* M.R. Evid. 503(d)(1); Field & Murray, *Maine Evidence* § 503.3 at 227. Additionally, "[t]here is a presumption that the person who was the health care, mental health, or licensed counseling professional at the time of the communication in question has authority to claim the privilege on behalf of the patient." M.R. Evid. 503(d)(2). A "health care professional" is "[a] person authorized to practice as a physician; [a] licensed physician's assistant; or [a] licensed nurse practitioner." M.R. Evid. 503(a)(2).

[¶26] Under this definition, a hospital or medical facility, such as MCH, is not considered a health care professional and cannot claim the privilege on behalf of the patient.[11] *See id.; see also State v. Moody*, 486 A.2d 122, 124

---

[11] In contrast, Maine's confidentiality statute defines a "health care practitioner" as "a person licensed by this State to provide or otherwise lawfully providing health care *or a partnership or*

(Me. 1984) (holding that the State could not claim the privilege on behalf of a patient).[12]   However, none of the individuals who are authorized to claim the privilege on behalf of the patient under Rule 503(d) has the capacity to *waive* the privilege; that right belongs to the patient alone.  *See Seider v. Bd. of Exam'rs of Psychs.*, 2000 ME 206, ¶¶ 17, 20, 762 A.2d 551*; see also Dorris v. Detroit Osteopathic Hosp. Corp.*, 594 N.W.2d 455, 459 (Mich. 1999).

[¶27]   In this case, although MCH did not claim the physician-patient privilege on behalf of the nonparty patients—and could not have done so, *see* M.R. Evid. 503(d)—it did object to the Estate's discovery request on the ground that the medical records sought by the Estate are privileged.   *See* M.R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, *not privileged . . . .*") (emphasis added).   In precluding the discovery of matter that is privileged, Rule 26(b)(1) does not require that the party objecting to the discovery request be the holder of the privilege.  Because the physician-patient

---

*corporation made up of those persons* or an officer, employee, agent or contractor of that person acting in the course and scope of employment, agency, or contract related to or supportive of the provision of health care to individuals."  22 M.R.S. § 1711-C(1)(F) (emphasis added).

   [12]  In *State v. Moody*, 486 A.2d 122, 124 (Me. 1984), although not parties to the action, the minor patient, her family, and her physician were present and involved with the case and had the opportunity to assert the physician-patient privilege but did not do so.  In the case before us, the nonparty patients have not been present or involved, likely do not even know that their medical records are being sought, and have had no opportunity to assert the privilege.

privilege "continues indefinitely, and can be waived by no one but the patient," it is proper for a party to object to discovery if the materials requested in discovery contain such privileged communications. *Dorris*, 594 N.W.2d at 459 (quotation marks omitted). It is on this basis that we consider whether the operative notes sought in this medical malpractice case are protected by the physician-patient privilege even in the absence of the nonparty patients' presence in the case to claim it.

[¶28] The nonparty patients whose medical records are at issue here are likely unaware that the court has issued an order compelling production of their records. *See* M.R. Evid. 511(b) ("A privilege is not waived by a disclosure that was . . . [m]ade without opportunity to claim the privilege."). To compel MCH to produce the medical records of these nonparty patients would deprive them of the protection of their communications with their healthcare professionals provided by the privilege simply because their common doctor, Dr. Marietta, has not been joined as a defendant and the hospital cannot claim the privilege under Rule 503(d). A patient's medical records are no less privileged simply because the patient is unaware of the prospect of disclosure and, therefore, unable to assert or waive the privilege, and none of the other individuals with the authority to assert the privilege has been made a party to

the suit. *See* M.R. Evid. 503(b), 511(b); *see also Tucson Med. Ctr. v. Rowles*, 520 P.2d 518, 523 (Ariz. Ct. App. 1974); *Meier v. Awaad*, 832 N.W.2d 251, 260 (Mich. Ct. App. 2013). Therefore, at least in these circumstances, when neither the patient nor the physician is a party to the case, we consider the privilege to exist and not to have been waived. *See* M.R. Evid. 511(b); *cf. Tucson Med. Ctr. v. Misevch*, 545 P.2d 958, 961 (Ariz. 1976) ("[W]hen neither the physician nor the patient has an interest in the proceedings, the hospital has standing to assert the privilege to protect the absent patient."). We therefore conclude that the unredacted patient records are privileged and not discoverable. *See* M.R. Civ. P. 26(b)(1).

[¶29] We next consider whether the nonparty medical records, when redacted of all personally identifying information, are protected by the physician-patient privilege.

2.      Scope of the Privilege: Confidentiality and Redaction

[¶30] Rule 503—the patient privilege rule—protects from disclosure "confidential communications." M.R. Evid. 503(b). Specifically, the patient's privilege is "to refuse to disclose, *and to prevent any other person from disclosing*, confidential communications made for the purpose of diagnosing or treating the patient's physical, mental, or emotional condition." M.R.

Evid. 503(b) (emphasis added). Pursuant to Rule 503(a)(5), for purposes of the privilege rule,

> A communication is "confidential" *if it was not intended to be disclosed to any third persons*, other than:
>
> > **(A)** Those who were present to further the interests of the patient in the consultation, examination, or interview;
> >
> > **(B)** Those who were reasonably necessary to make the communication; or
> >
> > **(C)** Those who are participating in the diagnosis and/or treatment under the direction of the . . . professional. This includes members of the patient's family.

(Emphasis added.) Although Rule 503 does not define "communication," other courts have held that, in the context of the physician-patient privilege, communication includes all information conveyed verbally between a patient and a physician as well as information and knowledge gained by the physician through observation and examination of the patient. *See State v. Comeaux*, 818 S.W.2d 46, 54-56 (Tex. Crim. App. 1991) (Campbell, J., concurring) (collecting cases); *see also State v. Schroeder*, 524 N.W.2d 837, 839-42 (N.D. 1994); *Williams v. City of Gallup*, 421 P.2d 804, 808 (N.M. 1966) (stating that "information obtained through observation or examination of the patient includes all inferences and conclusions drawn therefrom"). But whether a communication is confidential, and therefore privileged, does not depend on

the particular content of the communication or the specific kind of information involved; instead, whether a communication benefits from the protections afforded by Rule 503 hinges on the intention of the patient and his or her health care professional—whether the patient intended the communication "to be disclosed to any third persons." M.R. Evid. 503(a)(5); *see also Wipf,* 888 N.W.2d at 796-98 (Gilbertson, C.J., dissenting) (positing that redaction cannot "remove the 'confidential' quality of a communication" because redaction cannot "create a 'fixed purpose' in the mind of the patient to disclose the communication," and therefore a medical record remains "confidential as long as the patient does not intend to disseminate it, regardless of whether it has been redacted"); *In re Columbia Valley Reg'l Med. Ctr.*, 41 S.W.3d at 800-03 (analogizing the physician-patient privilege to the attorney-client privilege and observing that in the attorney-client context a trial court may not redact information covered by the privilege while permitting disclosure of the rest of the document once it has been established that the document contains a confidential communication because the privilege extends to the entire document, and therefore "redaction of any or all privileged portions of the nonparty medical records does not defeat the privilege"); Field & Murray, *Maine Evidence* § 503.2 at 226.

[¶31]  One of the primary questions presented by this appeal is whether the nonparty operative notes remain confidential, and therefore privileged, once personally identifying information is redacted—assuming that the redaction can be accomplished in a way that would produce information that is relevant or reasonably calculated to lead to the discovery of admissible evidence.  *See infra* n.18.  Because this is an issue of first impression in Maine,[13] we consider the approaches of other states that have grappled with the disclosure of redacted nonparty medical records and the privacy concerns implicated.

[¶32]  The states are split as to whether, and to what extent, redacting personally identifying patient information de-identifies nonparty medical records sufficiently to remove the records from the ambit of the physician-patient privilege.  However, there is general agreement among the states that certain personally identifying information—such as a patient's name and address—is absolutely protected by the physician-patient privilege and is not discoverable under any circumstances.[14]

---

[13]  This issue was presented in *McCain v. Vanadia*, 2018 ME 118, ¶ 16, 191 A.3d 1174; however, because we held the appeal moot, we did not consider the case on the merits.

[14]  *See e.g., In re Fink*, 876 F.2d 84, 85 (11th Cir. 1989) (applying Florida law to prevent disclosure of the names and addresses of a particular doctor's patients who had undergone a particular procedure during a specified time); *Bennett v. Fieser*, 152 F.R.D. 641, 643-44 (D. Kan. 1994) (allowing discovery of nonparty medical records pursuant to a Kansas privilege statute where "the patient's

[¶33]  In a majority of states that have addressed the issue, once such identifying information has been redacted, the physician-patient privilege no longer protects nonparty medical records from disclosure.[15]  In other states, redaction of a nonparty's personally identifying information is deemed insufficient to protect the nonparty's privacy interests, so that the physician-patient privilege continues to prevent the disclosure of *all* portions of nonparty patient records even when the records have been significantly

---

name and other identifying information [are] deleted from the records," and "the parties and counsel . . . [were ordered to] make no effort to learn the identity of the patient or attempt to contact the patient"); *Ex parte Mack,* 461 So. 2d 799, 800-01 (Ala. 1984) (preventing disclosure of patients' names and addresses in an action against a clinic and physician alleging negligent performance of an abortion); *Marcus v. Superior Ct.*, 95 Cal. Rptr. 545, 546 (Cal. Ct. App. 1971) (preventing disclosure of the names and addresses of certain patients who had received the same medical test as the plaintiff); *Meier v. Awaad*, 832 N.W.2d 251, 254, 259-60 (Mich. Ct. App. 2013) (preventing the disclosure of the names and addresses of nonparty patients).

[15]  *See e.g., Cochran v. St. Paul Fire & Marine Ins. Co.*, 909 F. Supp. 641, 645 (W.D. Ark. 1995) (applying Arkansas law and ordering the defendant hospital to release medication incident reports with patient names omitted, and denying the defendant's request to further redact "the name and title of the person discovering the incident, the name of the physician, the signature and title of the person involved in the incident, the section entitled analysis of the medication incident, the comment section, and the name of the department manager"); *Ziegler v. Superior Ct.*, 656 P.2d 1251, 1254-56 (Ariz. Ct. App. 1982) (ordering discovery of nonparty medical records provided that the "name, address, marital status and occupation or employment" and "[a]ny additional information that would tend to identify the patient . . . except for age, sex and race" were removed (quotation marks omitted)); *Amente v. Newman*, 653 So. 2d 1030, 1032-33 (Fla. 1995) (ordering the discovery of nonparty medical records where identifying information—names and addresses—is removed, but providing for additional procedural safeguards if the trial court is not satisfied that redaction alone is sufficient to protect nonparty privacy); *Terre Haute Reg'l Hosp., Inc. v. Trueblood*, 600 N.E.2d 1358, 1361-62 (Ind. 1992) (allowing the production of unredacted nonparty medical records where there are "adequate safeguards to protect the identity of the non-party patients," including requiring the plaintiff's attorney and expert to sign a confidential protective order and requiring leave of court to copy inspected records, which must be redacted to remove patient information); *Wipf v. Altstiel*, 888 N.W.2d 790, 794-95 (S.D. 2016) (holding that "anonymous, nonidentifying medical information is not privileged *per se*" because "there is *no patient* once the information is redacted").

24

redacted.[16] We determine that the nonparty privacy interests at stake are best served by the latter approach and that the physician-patient privilege of Rule 503 protects the entirety of privileged medical records.

[¶34]    The physician-patient privilege protects "confidential communications made for the purpose of diagnosing or treating the patient's physical, mental, or emotional condition, including alcohol or drug addiction." M.R. Evid. 503(b).   The privilege represents an acknowledgement that the potential evidentiary value of patient information is outweighed by the benefit and critical importance of encouraging a trusting relationship between patient and physician vital for full and effective treatment. "This out-of-court [relationship] is affected by giving assurance that the recipient of a confidence

---

[16] *See People ex rel. Dep't of Pro. Regul. v. Manos*, 782 N.E.2d 237, 244-47 (Ill. 2002) (concluding that disclosing records after "merely deleting the patient names and other identifying information from patient records would violate the physician-patient privilege"); *Parkson v. Cent. DuPage Hosp.,* 435 N.E.2d 140, 143-44 (Ill. App. Ct. 1982) (denying a discovery request for redacted nonparty medical records after the court concluded that redaction would not sufficiently protect the patients' expectation of privacy when they disclosed "prior and present medical conditions" to their doctors); *Meier*, 832 N.W.2d at 259 (observing that under Michigan law, the physician-patient privilege is an "absolute bar" that prohibits unauthorized disclosure of nonparty medical records, even when the patient's identity and other personal information are redacted); *Roe v. Planned Parenthood Sw. Ohio Region*, 912 N.E.2d 61, 71 (Ohio 2009) (concluding that "[r]edaction of personal information . . . does not divest the privileged status of confidential records"); *Buckman v. Verazin*, 54 A.3d 956, 964 (Pa. Super. Ct. 2012) (denying a discovery request for nonparty surgical records where the nonparty patients had not consented to the disclosure of their records); *see also Ortiz v. Ikeda*, No. 99C-10-032-JTV, 2001 Del. Super. LEXIS 193, at *4-5 (Del. Super. Ct. Mar. 26, 2001) (denying a discovery request for redacted nonparty medical records—even if subsequently sealed—because none of the nonparties waived the privilege and the court was "not persuaded that redaction of names adequately protects a patient's legitimate expectation of privacy").

will not be required to disclose it." Field & Murray, *Maine Evidence* § 501.1 at 206. Therefore, to foster this relationship, "it is necessary to secure the patient from disclosure in court of potentially embarrassing private details concerning health and bodily condition." 1 Robert P. Mosteller, *McCormick on Evidence* § 98 at 692 (8th ed. 2020).

[¶35]  The United States Supreme Court considered such public policy objectives and the balance of privacy concerns and evidentiary interests when it sanctioned the use of the psychotherapist privilege in federal litigation.[17] *See generally Jaffee v. Redmond*, 518 U.S. 1 (1996). There, the Court opined that "the psychotherapist-patient privilege is rooted in the imperative need for confidence and trust" and that "the mere possibility of disclosure [of confidential communications] may impede development of the confidential relationship necessary for successful treatment." *Id.* at 10 (quotation marks omitted). The Court made clear that the likely evidentiary benefit that would result from the disclosure of such sensitive personal information is modest when compared with the significant interest of the patient in seeking and the public in "facilitating the provision of appropriate treatment." *Id.* at 11.

---

[17]  Rule 503 includes provisions protecting communications made during the course of mental health and counseling treatment.  M.R. Evid. 503(a)(1)(B)-(C), (b).

[¶36] Several states have applied this same reasoning when considering the scope of the physician-patient privilege as it pertains to redacted nonparty medical records. For example, in *Roe v. Planned Parenthood Southwest Ohio Region*, 912 N.E.2d 61, 71 (Ohio 2009), the Supreme Court of Ohio concluded that "[r]edaction of personal information . . . does not divest the privileged status of confidential [medical] records." In that case, the parents of a minor who received an abortion at a Planned Parenthood facility sought the medical records of nonparties—many of whom were also minors—in a civil action for damages. *Id*. at 64-65. The parents did not dispute that the records were confidential and contained privileged information; however, they argued that redaction of the patients' personally identifying information removed the confidential and privileged status of the records. *Id.* at 67. Over Planned Parenthood's objection and motion for a protective order, the trial court ordered Planned Parenthood to turn over the medical records but specifically ordered that "all patient-identifying information [be] redacted from the records produced." *Id*. at 66. The Ohio Supreme Court, affirming the appellate court's reversal of the trial court's order compelling discovery, held that "[r]edaction is merely a tool that a court may use to safeguard the personal, identifying information within confidential records that have become subject to disclosure

either by waiver or by an exception," but that it was not a mechanism for circumventing the physician-patient privilege. *Id.* at 66, 71.

[¶37] Other courts concur in that approach. *See, e.g., People ex rel. Dep't of Pro. Regul. v. Manos*, 782 N.E.2d 237, 246-47 (Ill. 2002) (rejecting the argument that "deleting the patient names and identifying information from the records removes the records from protection under the physician-patient privilege" and concluding that "merely deleting the patient names and other identifying information from patient records would [not circumvent] the physician-patient privilege"); *Meier*, 832 N.W.2d at 259 (stating that "the physician-patient privilege prohibits disclosure even when the patient's identity is redacted" and that "[t]he names, addresses, telephone numbers, and medical information relative to nonparty patients fall within the scope of the physician-patient privilege"); *In re Columbia Valley Reg'l Med. Ctr.*, 41 S.W.3d at 803 (concluding that "the requested nonparty medical records in redacted form remain privileged"); *see also Ortiz v. Ikeda*, No. 99C-10-032-JTV, 2001 Del. Super. LEXIS 193, at *4-5 (Del. Super. Ct. Mar. 26, 2001) (concluding that "[t]he redaction of names does not alter the fact that the operative notes are privileged" because allowing the disclosure of redacted nonparty patient medical records "would mean that the patient's only real privilege is that of

having his name deleted before his intimate medical records are interjected into a civil lawsuit without his knowledge or consent").

[¶38] In this case, the Estate seeks the operative notes contained in nonparty medical records. The trial court ordered MCH to produce the notes but specified that "[e]ach redacted record shall include <u>only</u> the year of the surgery, the name of the surgeon (Dr. Marietta), the name of the procedure, and a portion of the section labeled 'operative procedure' (*i.e.*, all information other than the year, the name of the surgeon, the name of the procedure, and a portion of the 'operative procedure' section will be redacted)." The operative procedure section of the note was to be further redacted of "any identifying information (*e.g.*, name, date of birth, age, sex, race)" and disclose information "only to the point in the surgery where the gallbladder was removed." However, these operative notes themselves constitute *confidential communications*—records created by Dr. Marietta to inform her patients and their other treatment providers about the techniques used during surgery, the outcome of the procedure, any challenges encountered during the operation, and anything else relevant to the procedure or associated medical care and treatment. M.R. Evid. 503(b); *Ortiz*, 2001 Del. Super. LEXIS 193, at *3 (stating that "a doctor's communication, set to paper in the form of an operative note,

of the details of a surgical treatment performed on a patient" is a "confidential communication" and protected by the physician-patient privilege). Although the trial court ordered substantially more redaction than many other courts have, *see supra* n.14, the nonparty records even in this heavily redacted form remain protected by the physician-patient privilege and are therefore not discoverable.

[¶39] Absent a waiver of the privilege, it must be presumed that the nonparty patients in this case, like the patients in *Parkson v. Central Du Page Hospital*, 435 N.E.2d 140, 143-44 (Ill. App. Ct. 1982), for example, disclosed private medical information to their health care providers with an expectation of privacy. These disclosures were made in an environment marked by the assurance that their private medical information would be kept in confidence by their doctors and other treatment professionals. Likewise, the operative notes made by Dr. Marietta following the surgeries were for the benefit of her patients and were part of the ongoing confidential dialogue among the physician, the patient, and other care providers.

[¶40] Because there is no evidence that the nonparty patients in this case *intended* for any portion of these confidential communications "to be disclosed to any third persons," M.R. Evid. 503(a)(5), their medical records must be

deemed to remain privileged in their unredacted *and* redacted forms.[18] *See, e.g.,* *Meier*, 832 N.W.2d at 259; *Roe*, 912 N.E.2d at 71. To hold otherwise would erode the necessary trust between physician and patient and impede the delivery of effective physical, emotional, and mental health services—the very purpose of the privilege. *See* M.R. Evid. 503 & Advisers' Note to former M.R. Evid. 503 (Feb. 2, 1976); Field & Murray, *Maine Evidence* § 501.1 at 206; 1 Robert P. Mosteller, *McCormick on Evidence* § 98 at 692. The trial court erred in ordering the production of the nonparty operative notes in the circumstances of this case, and we vacate the court's judgment to the extent it compelled their disclosure by MCH.

The entry is:

> The portion of the discovery order compelling disclosure of any medical records of nonparty patients vacated. Remanded for issuance of an

---

[18] The Estate's argument also hinges entirely on the premise that the redaction of all identifying information from a patient record makes it impossible to identify the patient. That premise is demonstrably not true in all cases. For example, if one party to litigation seeks discovery of the other party's patient records, the identity of the patient is obvious even if the records are redacted. Thus, the Estate's premise is true only when the requester does not know the identity of the patient whose records are requested. Even then, if either the medical condition or the medical procedure described in the record is uncommon, it may be possible to deduce the identity of the patient from a fully redacted record. The disclosure of other information in medical records, for instance the date of a procedure performed in a small community hospital, could also create "the possibility of recognizing and equating a record" with a particular patient. *Manos*, 782 N.E.2d at 247. For us to give blanket endorsement to discovery of redacted patient records would be antithetical to the letter and spirit of M.R. Evid. 503.

order denying that part of the motion to compel.
In all other respects, appeal dismissed.

---

JABAR, J., dissenting.

[¶41]   Although I agree that neither the Maine statute providing for confidentiality of health care information, 22 M.R.S. § 1711-C (2020), nor the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C.S. § 1320d-6 (LEXIS through Pub. L. No. 116-91), prevent the disclosure of medical records when identifying information is redacted, I respectfully dissent because I believe that the physician-patient privilege set out in Maine Rule of Evidence 503 does not prevent the disclosure of relevant medical records of an unidentified nonparty patient.  I would follow the near unanimous approach of the other jurisdictions that have considered this issue and hold that relevant health information that does not identify the patient is not privileged.  This is the same approach taken in HIPAA and the Maine statute.

A.     HIPAA and the Maine statute

[¶42]   I concur in the Court's opinion indicating that the requested medical records are not confidential under HIPAA and the Maine statute, however I believe that it is unnecessary to rely on the statutes' respective

32

court-order exceptions for the disclosure of health information. *See* 22 M.R.S § 1711-C(6)(F-1); 45 C.F.R. 164.512(e).

[¶43]  Under HIPAA, it is a violation to disclose "individually identifiable health information."  42 U.S.C.S. § 1320d-6.  Section 1320d(6) defines "individually identifiable health information" as any information that

> (B) relates to . . . [health information] and—
>
> > (i) identifies the individual; or
> >
> > (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C.S. § 1320d(6).  By definition, unidentified health information is not confidential.

[¶44]  Similarly, under the Maine statute, section 1711-C(1)(E), defines health care information as "information that *directly identifies the individual* and that relates to an individual's physical, mental or behavioral condition, personal or family medical history or medical treatment or the health care provided to that individual."  *See* 22 M.R.S. § 1711-C(1)(E) (emphasis added). It specifically states that "'[h]ealth care information' does not include

information that protects the anonymity of the individual by means of encryption or encoding of individual identifiers . . . ." *Id.*[19]

[¶45]  Pursuant to both the federal and state statutes, health care information that does not identify the patient is not confidential.  *See* 42 U.S.C.S. § 1320d-6; 22 M.R.S § 1711-C(1)(E).  Therefore, there is no need to refer to the sections allowing disclosure pursuant to court order.  The corresponding exceptions dealing with court orders permit the court to order the disclosure of protected health care information—information that is identifiable and therefore confidential.  *See* 22 M.R.S § 1711-C(6)(F-1); 45 C.F.R. 164.512(e).  In this case, the medical information does not fit the definition of "individually identifiable health information," *see* 42 U.S.C.S. § 1320d(6), nor does it "directly identify the individual," 22 M.R.S. § 1711-C(1)(E).  The requested health care information in this case is by definition not confidential, and therefore there is no need to obtain a court order pursuant to section 1711-C(6)(F-1).  *See* 22 M.R.S. § 1711-C(1)(E),(2), (6).

---

[19]  Section 1711-C(1)(E) directs the Maine Health Data Organization (MHDO) to adopt rules to define what constitutes "identifying information."  22 M.R.S. § 1711-C (1)(E)(2020).  The MHDO rules specify twenty-five items as identifying information.  *See* 90-590 C.M.R. ch. 125 (effective Feb. 17, 2009).  None of these identifiers would be present in the redacted operative notes at issue pursuant to the court order.

34

## B. Privilege

[¶46] I also disagree with the Court's holding that Maine Rule of Evidence 503(b) protects the health care information in this case because I believe that we should adopt the same approach as the federal and state confidentiality laws (HIPAA & the Maine statute)—if the individual is not identifiable then the rule does not apply. 42 U.S.C.S. § 1320d-6; 22 M.R.S § 1711-C(1)(E), (2).

[¶47] Based upon the recognition that the confidentiality of the physician-patient relationship is paramount to medical care, the Maine statute prohibits the unauthorized disclosure of *identifiable* information obtained in the context of that relationship. *See* 22 M.R.S. § 1711-C; P.L. 1997, ch. 793; *see also An Act to Provide for Confidentiality of Healthcare Information* and *An Act Regarding Access to Medical Information*: *Hearing on L.D. 1737 & L.D. 1779 Before the J. Standing Comm. on Health & Human Servs.*, 118th Legis. (1997). Thus, section 1711-C "establishes safeguards for maintaining the confidentiality, security and integrity" of an individual's identifiable health information. L.D. 1737, Enacted Law Summary (118th Legis. 1998).

[¶48] The physician-patient privilege in Maine arises from our own evidentiary rules.[20] Maine Rule of Evidence 503(b) protects from disclosure

---

[20] The since-repealed statutory privilege cited by the Court "could not give assurance to the patient that what the patient said would not be disclosed." Field & Murray, *Maine Evidence* § 503.1

"confidential communications made for the purpose of diagnosing or treating the patient's physical, mental, or emotional condition." Like other evidentiary privileges, the physician-patient privilege exists to serve the public interest by encouraging complete and honest discourse between a patient and their doctor. *See Jaffee v. Redmond*, 518 U.S. 1, 11 (1996); *Lewin v. Jackson*, 492 P.2d 406, 410 (Ariz. 1972). The physician-patient privilege facilitates this interest by "secur[ing] the patient from disclosure in court of potentially embarrassing private details concerning health and bodily condition." 1 Robert P. Mosteller, *McCormick on Evidence* § 98 at 692 (8th ed. 2020).

[¶49] Here we are not interpreting a statutory confidentiality provision, but considering our own evidentiary rule and setting policy based on that rule. Although we are not bound by the Maine statute's definition of confidentiality in interpreting Rule 503, we should be wary of adopting a policy that is incongruous with that of the Maine Legislature. Rule 503 and the Maine statute both seek to facilitate effective health care services by protecting the confidentiality of the physician-patient relationship. *See* M.R. Evid. 503 Advisers' Note to former M.R. Evid. 503 (Feb. 2, 1976). We should not interpret

---

at 225; *see* 32 M.R.S.A. § 3295 (Supp. 1973), repealed by P.L. 1977, ch. 564, § 123 (effective July 23, 1977).

Rule 503 as preventing disclosure of nonidentifiable health information because such an interpretation conflicts with the Legislature's policy, which does not prevent disclosure of nonidentifiable health care information. *See* 22 M.R.S. § 1711-C(1)(E), (2). In this case, pursuant to HIPAA and the Maine statute, the hospital could produce these records (properly redacted) to the estate, or to anyone that requests them, but under the Court's holding these same records could not be produced to the litigants because Rule 503 prohibits disclosure.

[¶50] When any and all information that could potentially identify a patient is redacted prior to the disclosure of a relevant medical record, the privilege should not be applicable. In the absence of identifying information, there is no "patient" for the privilege to protect and the information contained within the redacted medical records becomes "nothing more than medical terminology." *Staley v. Jolles*, 230 P.3d 1007, 1011 (Utah 2010); *see also Wipf v. Altstiel*, 888 N.W.2d 790, 794 (S.D. 2016) ("This type of anonymous, nonidentifying information is not protected by the physician-patient privilege because there is *no patient* once the information is redacted.") Likewise, the purpose that the privilege exists to serve is no longer served because "[i]t is unlikely that a patient would be inhibited from confiding in his physician where

there is no risk of humiliation and embarrassment, and no invasion of the patient's privacy." *Terre Haute Reg'l Hosp., Inc. v. Trueblood*, 600 N.E.2d 1358, 1361 (Ind. 1992).

[¶51]  A substantial majority of other jurisdictions follows the approach of allowing for the discovery of relevant medical records when information that could identify a nonparty patient has been redacted.  *See, e.g., Wipf*, 888 N.W.2d at 793 (collecting cases); *Staley*, 230 P.3d at 1011; *Baptist Mem'l Hosp.-Union Cnty. v. Johnson*, 754 So. 2d 1165, 1169-71 (Miss. 2000); *State ex rel. Wilfong v. Schaeperkoetter*, 933 S.W.2d 407, 409-10 (Mo. 1996); *Amente v. Newman*, 653 So. 2d 1030, 1033 (Fla. 1995); *Terre Haute Reg'l Hosp.*, 600 N.E.2d at 1361-62; *Cmty. Hosp. Ass'n v. Dist. Ct.*, 570 P.2d 243, 244-45 (Colo. 1977); *Rudnick v. Superior Ct.*, 523 P.2d 643, 650 n.13 (Cal. 1974); *Snibbe v. Superior Ct.*, 168 Cal. Rptr. 3d 548, 556-57 (Cal. App. Ct. 2014); *Bennet v. Fieser*, 152 F.R.D. 641, 643-44 (D. Kan. 1994); *Todd v. S. Jersey Hosp. Sys.*, 152 F.R.D. 676, 684-87 (D.N.J. 1993).

[¶52]  To protect the anonymity of nonparty patients, courts following the majority approach have taken a variety of steps to ensure that any and all identifying information has been redacted from the medical records, including not just patient names, but any other information that could reasonably lead to

the identification of a patient—e.g., dates of birth, locations and dates of treatment, family and medical histories, or any other information deemed necessary. *See, e.g., Wipf*, 888 N.W.2d at 795; *Cmty. Hosp.*, 570 P.2d at 244.

[¶53] In *Wipf v. Altstiel*, the South Dakota Supreme Court held that "[i]n accordance with the rationale of . . . the almost unanimous view of other courts, we too hold that anonymous, nonidentifying medical information is not privileged *per se*." *Wipf*, 888 N.W.2d at 794. In *Wipf* and other similar cases, the courts have ordered procedural steps to protect the information provided within the medical records, such as issuing protective orders requiring leave of court to copy records, and limiting who the redacted records may be disclosed to for the purposes of litigation. *See Wipf*, 888 N.W.2d at 795; *Terre Haute*, 600 N.E.2d at 1362.

[¶54] In this case, the trial court took significant steps to protect the identity of any nonparty patients and to ensure that the request was not a fishing expedition. The trial court first determined that the requested information was relevant. The trial court stated, "Here, because the standard relied upon by the parties requires some assessment of the physician's usual practice, the procedure the physician has used in other surgeries has some tendency to make it more or less probable that she breached the standard of

care." After making this finding of relevance for purposes of discovery, the trial court ordered the production of twenty-five redacted notes on operations performed by Dr. Marietta before the surgery on Kennelly and twenty-five on operations performed after it.[21] The trial court ordered that *all information except* "the year of the surgery, the name of the surgeon (Dr. Marietta), the name of the procedure, and a portion of the section labeled 'operative procedure'" be redacted. To the extent there is any identifying information, (e.g., name, date of birth, age, sex, race) in the 'operative procedure' section, such information shall also be redacted." Further still, the trial court subjected the already highly-redacted information to a protective order, stating that "[p]laintiff's counsel shall not attempt to identify persons whose identities have been redacted and shall not provide copies to anyone, other than expert witnesses in the case . . . ."

[¶55] This is not to say that redactions in all cases make the protections of the physician-patient privilege inapplicable. The physician-patient privilege, although broad, should not be a blunt impediment to the discovery of highly

---

[21] Because I agree with the trial court that the procedure used by Dr. Marietta in the twenty-five surgeries before Kennelly's *and* the twenty-five surgeries after Kennelly's has some tendency to make it more or less probable that she breached the standard of care, I would hold that the trial court properly concluded that the requested operative notes from the twenty-five surgeries that took place after Kennelly's are relevant for purposes of discovery.

relevant medical records when there is a sufficient guarantee of anonymity through the use of redactions or other procedural protections. "Whether and under what circumstances redaction can make good on its promise of anonymity depends on the circumstances of each case." *Staley*, 230 P.3d at 1012. In this vein, a recent dissent in *McCain v. Vanadia* raised the issue of whether, even with substantial redactions, the identities of patients could be protected in "smaller Maine communities where only a few treatments may be provided per year." 2018 ME 118, ¶ 27, 191 A.3d 1174 (Alexander, J., dissenting). This, and other similar concerns, however, would properly be considered by the court on a case-by-case basis prior to issuing an order compelling the production of medical records. *See Wipf*, 888 N.W.2d at 795 (noting that, on remand, the court should consider when the small population would make identification of patients likely); *Staley*, 230 P.3d at 1013 (noting that a large population served by multiple hospitals increased the likelihood that anonymity would be preserved). If "the prospect of preserving anonymity through redaction [is] too uncertain," *Staley*, 230 P.3d at 1013, then the court, in its discretion, could deny the request for records, even with substantial redactions.

C.    Conclusion

[¶56]  It does not make sense to hold that HIPAA and the Maine statute provide less protection to a patient's confidential record than a court created rule of evidence pertaining to the same records.

[¶57]  In this case, I believe that the trial court took sufficient steps to protect the identity of the nonparty patients whose medical records are at issue.  I would affirm the trial court's order compelling the production of the operative notes along with the safeguards ordered by the court.

---

Philip M. Coffin III, Esq., and Abigail C. Varga, Esq. (orally), Lambert Coffin, Portland, for appellant Mid Coast Hospital

Travis M. Brennan, Esq. (orally), and Taylor A. Asen, Esq., Berman & Simmons, P.A., Lewiston, for appellee Estate of Carol A. Kennelly

Karen Frink Wolf, Esq., and Rachel M. Wertheimer, Esq., Verrill Dana LLP, Portland, for amici curiae Maine Hospital Association and Maine Medical Association

Thomas L. Douglas, Esq., Douglas, McDaniel & Campo LLC, PA, Westbrook, for amicus curiae Maine Trial Lawyers Association

Cumberland County Superior Court docket number CV-2016-471
FOR CLERK REFERENCE ONLY